JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ALLAN KENT KURTZ,<br><br>                Debtor.<br>_____<br>ALLAN KENT KURTZ<br><br>                Appellant,<br><br>      v.<br><br>3H CORPORATION,<br><br>                Appellee. | Case No. CV 12-07175 DMG<br><br>Bankruptcy Case No. 1:11-bk-17064-VK<br><br>Adversary Case No. 1:11-ap-01575-VK<br><br>**ORDER RE BANKRUPTCY APPEAL** |

     This matter is before the Court on an appeal from the Bankruptcy Court's grant of summary judgment for 3H. The Court deems this matter suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 8012-7. Having duly considered the respective positions of the parties, the Court now renders its decision. For the reasons set forth below, the judgment of the Bankruptcy Court is **AFFIRMED**.

//
//
//
//

# I.

# **FACTUAL AND PROCEDURAL BACKGROUND**

On August 28, 2005, Appellee 3H Corporation ("3H") entered into an agreement (the "Agreement") with Integrated Technologies Consulting, Inc. ("ITC") to jointly solicit contracts to design, manufacture, and sell emergency telephone boxes. (R. at 37.)[1] Appellant Allan Kent Kurtz signed the Agreement in his capacity as President of ITC. (*Id.* at 40.) As part of the Agreement, the parties established a separate bank account (the "Account"), to be utilized solely for the purposes of the Agreement. (*Id.* at 38.) In October 2008, a dispute arose between 3H and ITC, regarding the performance of their respective obligations under the Agreement. (*Id.* at 62.) As a result, ITC transferred its funds in the Account to another bank account, reasoning that 3H had materially breached the Agreement and notifying 3H as such. (*Id.*)

On November 20, 2008, in response to ITC's transfer of funds, 3H filed an action in Los Angeles County Superior Court, against ITC and its corporate officers, including Kurtz, for breach of contract, breach of the covenant of good faith and fair dealing, fraud, embezzlement, injunctive relief, declaratory relief, accounting, and breach of fiduciary duty. (*Id.* at 23-24.) On January 26, 2010, the parties to the state court action stipulated to resolve their dispute by private arbitration. (*Id.* at 41-46.) The stipulation submitted the "entire controversy" to binding arbitration before ADR Services, Inc. ("ADR"). (*Id.* at 43.) The arbitration was held over the course of seven days in October and November 2010 and February 2011. (*Id.* at 24.) The arbitration was governed by ADR's "Arbitration Rules." (*Id.* at 74, 83-92.) Retired Los Angeles Superior Court Judge Eli Chernow (the "Arbitrator") presided over the arbitration. (*Id.* at 10.) On March 23, 2011, the Arbitrator issued a 20-page decision ("Award") against Kurtz personally, finding him liable for ITC's actions on an alter ego theory. [Doc. # 21.] The Award included findings of fact and conclusions of law and held Kurtz personally liable to 3H

---

[1] Kurtz's Excerpts of the Record [Doc. # 19].

for compensatory and punitive damages.  (Award at 19.)  In October 2011, the Los Angeles County Superior Court confirmed the Award.  (R. at 76.)

On June 7, 2011, Kurtz petitioned for Chapter 13 bankruptcy, converting the action to a Chapter 7 bankruptcy on July 5, 2011.  (*Id* at 23.)  On October 7, 2011, 3H filed a Complaint to Determine the Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4), alleging that Kurtz could not discharge his liability for the damages granted in the Award.  (*Id.* at 8-12.)  The Complaint alleged that Kurtz's liability to 3H could not be discharged in the bankruptcy because it arose from Kurtz's "defalcation while acting in a fiduciary capacity," under 11 U.S.C. § 523(a)(4).  (*Id.* at 12.)  The Complaint also claimed that the Arbitrator had already determined that Kurtz had engaged in defalcation while in a fiduciary capacity.  (*Id.*)  The Complaint alleged that the Award warranted summary judgment in the dischargeability action, on the basis of issue preclusion.  (*Id.*).

On June 8, 2012, the Bankruptcy Court granted 3H's Motion for Summary Judgment and entered judgment that Kurtz's liability under the Award was non-dischargeable, under 11 U.S.C. section 523(a)(4).  (Am. Notice of Appeal, at 4) [Doc. # 2.]  On August 21, 2012, Kurtz filed a notice of appeal with this Court arising from the Bankruptcy Court's grant of summary judgment for 3H.[2]  (*Id.*)

## II.

## **STANDARD OF REVIEW**

A district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*.  Fed. R. Bankr. P. 8013; *Gebhart v. Gaughan* (*In re Gebhart*), 621 F.3d 1206, 1209 (9th Cir. 2010) (citing *Abele v. Modern Fin. Plans Servs., Inc.* (*In re Cohen*), 300 F.3d 1097, 1101 (9th Cir. 2002)).  Summary judgment is

---

[2] On January 18, 2012, Kurtz filed a Motion for Summary Judgment in the Bankruptcy Court, which the Bankruptcy Court denied on March 22, 2012. (R. at 28-29.) On August 21, 2012, Kurtz filed a separate notice of appeal with this Court arising from the Bankruptcy Court's denial of his Motion. *See In re Allan Kent Kurtz*, Case No. 2:12-cv-07181-DMG.  The Court dismissed the appeal for lack of jurisdiction because no final judgment had been entered.  *Id.*  The present appeal does not address the denial of Kurtz's Motion.  (Am. Notice of Appeal at 1.)

appropriate "if the record shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Arrow Elecs., Inc. v. Justus (In re Kaypro)*, 218 F.3d 1070, 1073 (9th Cir. 2000) (quoting Fed. R. Civ. P. 56(c)).

A mixed question of law and fact is reviewed *de novo*. *See In re George*, 318 B.R. 729, 732-33 (BAP 9th Cir. 2004) (citing *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988)). The bankruptcy court's determination regarding the availability of issue preclusion is reviewed *de novo*, because it involves mixed questions of law and fact. If issue preclusion is available, the bankruptcy court's decision regarding whether or not to apply the doctrine is reviewed for abuse of discretion. *See Dias v. Elique*, 436 F.3d 1125, 1128 (9th Cir. 2006).

## III.

## DISCUSSION

### A. The *Rooker-Feldman* Doctrine is Inapplicable

As a threshold matter, 3H argues that the *Rooker-Feldman* doctrine deprived the Bankruptcy Court of jurisdiction to review issues already settled by the Award and confirmed by the state court. The *Rooker-Feldman* doctrine prohibits federal district courts from hearing cases that constitute appeals of state court judgments. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291-2, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). Consequently, lower federal courts of original jurisdiction have "no authority to review the final determinations of a state court in judicial proceedings." *Sasson v. Sokoloff* (*In re Sasson*), 424 F.3d 864, 871 (9th Cir. 2005) (quoting *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986)), *cert. denied*, 547 U.S. 1206, 126 S. Ct. 2890, 165 L. Ed. 2d 917 (2006). The *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 281.

The *Rooker-Feldman* doctrine does not apply to "bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case." *Sasson*, 424 F.3d at 871 (citing *Gruntz v. County of Los Angeles* (*In re Gruntz*), 202 F.3d 1074, 1081 (9th Cir. 2000) (*en banc*)). Actions seeking a determination of non-dischargeability are such core bankruptcy proceedings and are not subject to the *Rooker-Feldman* doctrine. *Id.* (quoting *Gruntz*, 202 F.3d at 1081-82). Although the dischargeability action below may have raised the same issues as those decided by the confirmed Award, it did not constitute an appeal from the Award. Rather, the action below concerned the dischargeability of Kurtz's debt and Kurtz's substantive rights under the Bankruptcy Code. Thus, the *Rooker-Feldman* doctrine is inapplicable.

**B.     The Record Supports a Grant of 3H's Motion for Summary Judgment**

Kurtz argues that the Bankruptcy Court improperly gave issue preclusive effect to the Award confirmed by the state court, when granting summary judgment to 3H. As explained below, this Court finds that the Bankruptcy Court did not err in doing so.

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, an arbitral award confirmed by a state court is entitled to full faith and credit in the federal courts. *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989). Once an arbitral award is confirmed by a state court, only "minimal due process" is required in the arbitration proceedings, in order for it to serve as a basis for issue preclusion. *Id.* at 1181. Here, the ADR Rules easily satisfy that standard and the arbitral proceedings were conducted by a retired state court judge in an adjudicatory fashion.

The preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued. *Harmon v. Kobrin* (*In re Harmon*), 250 F.3d 1240, 1245 (9th Cir. 2001) (citing *Gayden v. Nourbakhsh* (*In re Nourbakhsh*), 67 F.3d 798, 800 (9th Cir. 1995)); *Caldeira*, 866 F.2d at 1178. Under California law, courts may only give issue preclusive effect to a judgment if five requirements are satisfied: (1) the issue to be precluded must be

identical to that decided in a former proceeding (2) the issue must have been actually litigated in the former proceeding; (3) it must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *See Gikas v. Zolin*, 6 Cal. 4th 841, 849, 25 Cal. Rptr. 2d 500 (1993) (quoting *Lucido v. Superior Court*, 51 Cal. 3d 335, 341, 272 Cal. Rptr. 767 (1990)). To meet the burden for application of issue preclusion, the party seeking preclusion must introduce a record sufficient to determine whether the above requirements are met. *In re Honkanen*, 446 B.R. 373, 382 (B.A.P. 9th Cir. 2011).

In this case, the Award held Kurtz personally liable for breaching a fiduciary duty to 3H by withdrawing funds from their jointly controlled account. (Award at 16.) On this basis, the Arbitrator awarded 3H compensatory and punitive damages, giving rise to the debt at issue in the dischargeability action. (*Id.* at 19.) In 3H's Complaint to Determine Dischargeability of Debt, 3H claimed that the Award established, by issue preclusion, that Kurtz's debt was non-dischargeable under 11 U.S.C. section 523(a)(4). (R. at 12.)

Section 523(a)(4) provides that a debt is non-dischargeable if it was "for . . . defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). For issue preclusion to apply, the Arbitrator must have made findings that Kurtz engaged in "defalcation" and was a "fiduciary," both within the meaning of Section 523(a)(4). These findings must have been actually litigated and necessary to the Arbitrator's decision. The other requirements of issue preclusion are satisfied because the parties here are the same as in the prior dispute and the Award is final.

### a. The Arbitrator Found that Kurtz Defalcated Funds

Defalcation of funds is a "misappropriation of trust funds or money held in any fiduciary capacity." *In re Lewis*, 97 F.3d 1182, 1186 (9th Cir. 1996). On May 13, 2013, the United States Supreme Court decided *Bullock v. Bankchampaign,* ___U.S.___, 133 S.Ct. 1754 (2013), holding that "defalcation," within the meaning of Section 523(a)(4),

requires a mental state of either intent or recklessness "of the kind set forth in the Model Penal Code." *Id.* at 1759.

The Award found that Kurtz misappropriated funds, breaching his fiduciary duty. After deciding that Kurtz was ITC's alter ego, the Arbitrator found that "ITC clearly breached its fiduciary duty by withdrawing the project funds from the jointly controlled account and disbursing the funds after October 20, 2008 solely for its benefit." (Award at 16.) The finding of misappropriation was actually litigated, necessary, and on the merits; it was the basis for the damages award.

The Award also found, in ruling on punitive damages, that the breach was "willful, malicious and oppressive," calling it "reprehensible" and "essentially a form of theft." (*Id.* at 18-19.) The finding of willfulness is equivalent to a finding of intent as required by *Bullock*. The finding that the conduct was willful, malicious, and oppressive was necessary to the finding that punitive damages were to be awarded. Cal. Civ. Code §3294(a) ("In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff . . . may recover damages for the sake of example and by way of punishing the defendant.") Because the Arbitrator actually and necessarily found that Kurtz intentionally misappropriated funds, the entire issue of defalcation is subject to issue preclusion.

### b. The Arbitrator Found that Kurtz Had a Fiduciary Duty Within the Meaning of Section 523(a)(4)

Kurtz also argues that the Award's findings did not establish that he was acting in a fiduciary capacity, within the meaning of Section 523(a)(4). The meaning of "fiduciary" under Section 523(a)(4) is narrower than the typical definition of a relationship involving confidence, trust and good faith. *In re Cantrell,* 329 F.3d 1119, 1125 (9th Cir. 2003) (citing *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986)). Under this narrower definition, "the fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the

debt." 329 F.3d at 1125 (quoting *Lewis v. Scott* (*In re Lewis*), 97 F.3d 1182, 1185 (9th Cir. 1996)).

The court may look to state law to determine when a trust in this strict sense exists. *Ragsdale*, 780 F.2d at 796 (citing *Runnion v. Pedrazzini* (*In re Pedrazzini*), 644 F.2d 756, 758 (9th Cir. 1981)). The Ninth Circuit has recognized that, under California law, participants in a joint venture or other partnership are trustees over the assets of the joint venture and, thus, are "fiduciaries" within the meaning of Section 523(a)(4). *Ragsdale*, 780 F.2d at 796 n.3 (citing *Leff v. Gunter*, 33 Cal. 3d 508, 514, 189 Cal. Rptr. 377, 381 (1983)). Under *Ragsdale* and *Leff*, if 3H and ITC were partners in a joint venture, they were "fiduciaries" for the purposes of Section 523(a)(4). *Ragsdale*, 780 F.2d at 796 & n.3; *Leff*, 33 Cal. 3d at 514. Here, the Arbitrator "conclude[d] that the legal relationship [the parties] created was a joint venture regardless of its internal label" (Award at 16), a reference to the provision in the Agreement declaring that ITC and 3H were not entering a joint venture. (R. at 39, ¶ F ("This agreement does not create a partnership or joint venture between ITC and [3H] . . . .").) Complicating matters, the Award states that "[the joint venture] finding is not necessary to the conclusion regarding fiduciary duty." Because the finding of a joint venture was not necessary to the final decision, it cannot support a finding of issue preclusion.

The circumstances under which the Arbitrator found a fiduciary duty to exist, however, are enough to satisfy Section 523(a)(4). He found that "ITC, as holder of the contract and bank account, was obligated to manage the affairs of the project and its finances for the benefit of both parties to the contract." (Award at 16.) This is a pre-existing fiduciary duty within the purview of Section 523(a)(4), not "the sort of trust *ex maleficio*" excluded from the statute. *Ragsdale*, 760 F.2d at 796 (contrasting a trust that "arises only when the partner derives profits without consent of the partnership"). Therefore, the Arbitrator did not need to rely on the existence of a joint venture to find the existence of a fiduciary duty within the meaning of Section 523(a)(4).

The Arbitrator found both that Kurtz defalcated funds and he was a fiduciary. These issues were actually litigated and necessary to the arbitration award. Therefore, the issues supporting nondischargeability under Section 523(a)(4) were previously decided, and the Bankruptcy Court properly applied issue preclusion.

## IV.
## CONCLUSION

In light of the foregoing, the judgment of the Bankruptcy Court is **AFFIRMED**.

**IT IS SO ORDERED**.

DATED: July 10, 2013

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

cc: U.S. Bankruptcy Court